IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
WESTERN DIVISION


RICHARD PALERMO                                    PLAINTIFFS
and SHEILA PALERMO

VS.                         CIVIL ACTION NO. 5:07-cv-78(DCB)(JMR)

LETOURNEAU TECHNOLOGIES, INC.; DANIEL
C. DREW d/b/a NATIONWIDE MEDICAL REVIEW;
KRISTY BROGAN; MISSISSIPPI BAPTIST
MEDICAL CENTER; GENE R. BARRETT, M.D.;
LIFE LINK TISSUE BANK, INC.; and NUTECH
MEDICAL, INC.                                      DEFENDANTS


<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the plaintiffs' Motion to
Remand **(docket entry 19)**.  Having reviewed the motion and response
thereto, the memoranda and the applicable law, and being otherwise
fully advised in the premises, the Court finds as follows:

I. BACKGROUND AND PROCEDURAL HISTORY

On February 12, 2007, the plaintiffs filed a complaint in the
Circuit Court of Warren County, Mississippi, against LeTourneau
Technologies, Inc. (hereinafter "LTI"), Daniel C. Drew d/b/a
Nationwide Medical Review, Kristy Brogan, Fall Creek Health and
Safety, Inc., Mississippi Baptist Medical Center, Gene R. Barrett,
M.D., Life Link Tissue Bank, Inc., NuTech Medical, Inc., and Ace
Property and Casualty Insurance Co.  On March 7, 2007, LTI filed a
notice of removal to this Court, based on federal question
jurisdiction, 28 U.S.C. § 1331, diversity of citizenship, 28 U.S.C.
§ 1332, and supplemental jurisdiction, 28 U.S.C. § 1367, as well as

pendent jurisdiction and ancillary jurisdiction.  The removed action was given cause number 5:07-cv-52(DCB)(JMR).

In support of its assertion of federal question jurisdiction, defendant LTI alleged that the plaintiffs' complaint arose under the laws of the United States, namely the Longshoremen and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. § 901, et seq.  Among the allegations in the Complaint against LTI were the following:

COUNT II

WRONGFUL DISCHARGE

* * *

36.   It is the public policy of both the State of Mississippi and the United States of America that employees who are injured while acting within the scope and course of their employer's business, including the Plaintiff, be provided workers' compensation benefits or, in this case, benefits under the Longshoreman's and Harbor Workers' Act.

37.  LeTourneau's actions aforesaid, both in terminating the Plaintiff's employment with the Defendant and in terminating the Plaintiff's aforesaid benefits associated with and caused by the Plaintiff's work-related injury herein, were in retaliation for the Plaintiff applying for, seeking, and receiving benefits caused by or associated with his work-related injury.

38.  The aforesaid wrongful and retaliatory discharge of the Plaintiff by LeTourneau is in violation of the public policy of both the State of Mississippi and the United States of America.

39.  LeTourneau had a duty to refrain from seeking to create and to refrain from creating false reasons to justify or attempt to justify its discharge of the Plaintiff from Defendant's employment.

40.   LeTourneau violated its aforesaid duty by intentionally or negligently attempting to create and/or

2

creating false reasons to discharge or attempt to justify
Defendant's discharge of the Plaintiff from the
Defendant's employment. LeTourneau also wrongfully
interfered with the Plaintiff's right to unemployment
benefits, stating that Palermo's unemployment was due to
his use of cocaine and violation of LeTourneau's work
rules.

* * *

Compl. in Cause No. 5:07-cv-52(DCB)(JMR), ¶¶ 36-40.

On March 30, 2007, the plaintiffs filed a motion for voluntary

non-suit, alleging "fatal technical defects" in the complaint

against certain defendants, the receipt of information from other

defendants which would result in dismissal of those defendants, and

the plaintiffs' desire to remove any reference to federal law,

namely the LHWCA, in order to foreclose the issue of whether the

plaintiffs are seeking recovery under federal law.  On the same

day, March 30, 2007, the plaintiffs filed a new complaint against

all but two of the original defendants in the Circuit Court of

Warren County, Mississippi, which is the case presently before this

Court.

On April 5, 2007, the plaintiffs filed a motion to remand

cause number 5:07-cv-52(DCB)(JMR).  On September 25, 2007, the

Court issued a Memorandum Opinion and Order granting the

plaintiffs' motion for voluntary non-suit, which the Court

construed as a Motion for Voluntary Dismissal by Order of Court

under Fed.R.Civ.P. 41(a)(2), and denying the motion to remand as

moot.

The present action, cause number 5:07-cv-78(DCB)(JMR) was removed to this Court on April 18, 2007. As with the former action, removal is based on federal question jurisdiction, 28 U.S.C. § 1331, diversity of citizenship, 28 U.S.C. § 1332, and supplemental jurisdiction, 28 U.S.C. § 1367, as well as pendent jurisdiction and ancillary jurisdiction.

The present Complaint names all of the original defendants except for Fall Creek Health and Safety, Inc., and Ace Property and Casualty Insurance Co. The plaintiffs, Richard and Sheila Palermo, are both citizens of the State of Mississippi. Compl., ¶ 1. Defendant Mississippi Baptist Medical Center ("MBMC") is a resident corporation of the State of Mississippi. Compl., ¶ 5. Defendant Gene R. Barrett, M.D. ("Barrett") is a citizen of the State of Mississippi. Compl., ¶ 6. Defendant Life Link Tissue Bank, Inc. ("Life Link"), is a resident corporation of the State of Florida. Compl., ¶ 7. Defendant NuTech Medical, Inc. ("NuTech") is a resident corporation of the State of Alabama. Compl., ¶ 8. Defendant LTI is a resident corporation of the State of Texas. Compl., ¶ 2. Defendant Daniel C. Drew d/b/a/ Nationwide Medical Review ("Drew") is a citizen of the State of Indiana. Compl., ¶ 4. Defendant Kristy Brogan ("Brogan") is a citizen of the State of Texas.[1] Not. of Remov., ¶ 6(B).

---

[1] The Complaint alleges only that Brogan's residence is unknown. The Notice of Removal alleges that Brogan is a citizen of the State of Texas, and this jurisdictional fact is not challenged by the

The Court notes, as an initial matter, that the Fifth Circuit interprets 28 U.S.C. §§ 1446(a) and (b) as imposing a "rule of unanimity," _i.e._, a requirement that all properly served defendants join in a notice of removal within the relevant thirty-day period as defined in the statute. Gillis v. Louisiana, 294 F.3d 755, 759 (5th Cir. 2002); Doe v. Kerwood, 969 F.2d 165, 167 (5th Cir. 1992); Getty Oil Corp. v. Ins. Co. of N. Am., 841 F.2d 1254, 1262-63 (5th Cir. 1988). The rule requires "some timely filed written indication from each served defendant, or from some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has consented to such action." Getty Oil, 841 F.2d at 1262 n.11.

In this case, not all of the defendants joined in the Notice of Removal filed by LTI. Joinders were filed by Barrett (docket entry 4), Drew (docket entry 5), Brogan (docket entry 6), and MBMC (docket entry 7). Defendants Life Link and NuTech did not join in the Notice of Removal. However, the failure of these defendants to join in the removal within the statutory thirty-day period is a non-jurisdictional defect that can be waived. See Johnson v. Helmerich & Payne, Inc., 892 F.2d 422, 423 (5th Cir. 1990)("The failure of all the defendants to join in the [notice of removal] is not a jurisdictional defect."). Although they filed a timely motion to remand, the plaintiffs did not timely object to removal

plaintiffs.

based on the procedural defect arising from Life Link's and
NuTech's failure to join in the Notice of Removal, and they have
therefore waived it.  <u>See</u> 28 U.S.C. § 1446(c)("A motion to remand
the case on the basis of any defect in removal procedure must be
made within thirty days after the filing of the notice of removal
under 1446(a).").

In their new complaint, the plaintiffs allege that plaintiff
Richard Palermo was employed by LTI from February 1996 to September
21, 2006.  On March 2, 2005, he sustained an injury to his right
knee in an accident at work, and subsequently was treated by Dr.
Barrett at MBMC.  The Complaint alleges that during the course of
this treatment, an allograft[2] was furnished by Life Link and
transported by NuTech to MBMC.  The plaintiffs allege that the
allograft was contaminated because of the negligence of Life Link
and NuTech, and that Barrett and MBMC knew or should have known of
the contamination prior to the insertion of the allograft into
Palermo's right leg.  Palermo alleges that he suffered disabilities
because of the defendants' negligence, and that he had to undergo
additional surgeries.

After he was cleared to return to work with his employer,
Palermo was tested for drugs by LTI on September 9, 2006.  The

---

[2] The plaintiffs' Complaint uses the word "allograph," which means
the written form of a letter of the alphabet.  An "allograft" is "a
graft of tissue between individuals of the same species."
Dorland's Illus. Med. Dict., p. 51.

plaintiffs allege that the drug test violated LTI's published work rules, and that LTI knew Palermo was still undergoing treatment and taking medication as a result of his work-related injury.   The Complaint alleges that although the tests came back negative, LTI told Palermo and others that Palermo had tested positive for cocaine and that he was being terminated.   Defendant Brogan, who administered the test, and defendant Drew, who furnished the results, are alleged to have "negligently conspired" with LTI to furnish a basis for the termination of Palermo's employment.

In their complaint, the plaintiffs assert claims for medical negligence, product liability, wrongful discharge, slander, intentional infliction of emotional distress, and negligence.   The medical negligence and product liability claims are brought only against defendants Barrett, MBMC, Life Link, and NuTech.   The claims for wrongful discharge, slander, and intentional infliction of emotional distress are brought only against defendant LTI.   The negligence claims are brought only against defendants LTI, Brogan, and Drew.   The plaintiffs seek sundry types of damages (including loss of consortium by Sheila Palermo) and demand a judgment of no less than $2,500,000.00 in actual damages (in addition to punitive damages, attorney fees, costs, and pre- and post-judgment interest).

On April 27, 2007, the plaintiffs filed their Motion to Remand (docket entry 19) on the bases that there is no federal question

jurisdiction and that complete diversity of citizenship among the parties is lacking.  LTI filed a response to the plaintiffs' motion, asserting federal question jurisdiction under the LHWCA, and invoking the fraudulent misjoinder doctrine as a basis for claiming complete diversity of citizenship.  The plaintiffs' motion is now before the Court.

## II. ANALYSIS

When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff. Willy v. Coastal Corp., 855 F.2d 1160, 1163–64 (5th Cir. 1988). Removal statutes are strictly construed, and all doubts are resolved against the finding of proper removal.  Dodson v. Spiliada Maritime Corp., 951 F.2d 40, 42 (5th Cir. 1992); Butler v. Polk, 592 F.2d 1293, 1296 (5th Cir. 1979).

## A.  Federal Question Jurisdiction

In support of its assertion of federal question jurisdiction, defendant LTI alleges that the plaintiffs' claims against it

> arise out of the termination of Richard Palermo's employment with LTI, which termination is alleged to have been in retaliation for Richard Palermo's applying for benefits under the LHWCA.  Plaintiffs allege that LTI contrived a drug test as a pretext to terminate Richard Palermo's employment and that LTI's true motivation for Richard Palermo's termination was his application for benefits under the LHWCA.  Plaintiffs claim that Defendants Daniel Drew, M.D. d/b/a Nationwide Medical Review (which performed the medical review of Richard Palermo's drug test), and Kristy Brogan (the technician which [sic] collected the test sample from Richard

Palermo), each acted negligently and in connection with LTI's efforts to wrongfully terminate Richard Palermo's employment.

Notice of Removal, ¶ 7.

The plaintiffs' present Complaint alleges the following concerning Richard Palermo's termination by LTI:

COUNT II

WRONGFUL DISCHARGE

* * *

32.   It is the public policy of both the State of Mississippi and the United States of America that employees who are injured while acting within the scope and course of their employer's business, including the Plaintiff, be provided workers' compensation benefits or, in this case, benefits under the Longshoreman's and Harbor Workers' Act. This Complaint is not related to any relief under the LHWA, as such claim is being pursued on behalf of the Plaintiff herein by another attorney, Honorable Tommy Dulen of Gulfport, Mississippi. Such proceeding is pending in the Office of Workers' Compensation Programs, U.S. Department of Labor, Claim #: 07-174351. There is no "federal question" involved in this cause of action.   No damages are sought in this action which are covered by the LHWA claim.

33. LeTourneau Technologies, Inc., had a duty to refrain from seeking to create and to refrain from creating false reasons to justify or attempt to justify its discharge of the Plaintiff from Defendant's employment. It also had a duty not to intentionally or negligently cause Plaintiff's mental or emotional distress or harm. LeTourneau Technologies, Inc., violated its aforesaid duty by intentionally or negligently attempting to create and/or creating false reasons to discharge or attempt to justify Defendant's discharge of the Plaintiff from the Defendant's employment.   LeTourneau Technologies, Inc., also wrongfully interfered with the Plaintiff's right to employment benefits, stating that Palermo's unemployment was due to his use of cocaine and violation of the LeTourneau Technologies, Inc. work rules.

9

Compl., ¶¶ 32-33.

In their brief in support of their motion to remand, the plaintiffs reiterate that Richard Palermo has a claim for a work related injury he is pursuing in a separate action, and that the plaintiffs seek no recovery under the LHWCA in this action. Plaintiffs' Mem., p. 6.

In response, LTI asserts: "The basis for federal question jurisdiction is that Plaintiff's [sic] claim for wrongful termination is really a disguised claim for retaliation under the LHWCA, 33 U.S.C. § 948a, which Plaintiffs have tried to omit pleading directly." LTI's Mem., p. 5. LTI also asserts that the plaintiffs "cannot defeat the defendant's right to remove by omitting to plead necessary federal questions." LTI's Mem., p. 18 (citing Franchise Tax Bd. v. Const. Laborers Vacation Trust, 463 U.S. 1, 22 (1983)). Specifically, LTI claims that the plaintiffs' complaint contains a federal claim for retaliation in connection with Richard Palermo's filing for benefits under the LHWCA. LTI's Mem., p. 19.

Federal question jurisdiction arises when a plaintiff sets forth allegations "founded on a claim or right arising under the Constitution, treaties or laws of the United States." See 28 U.S.C. § 1331. For a claim to "arise under" federal law, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's

cause of action." Gully v. First Nat'l Bank in Meridian, 299 U.S. 109, 112 (1936). "The presence of a substantial federal question must be apparent without the aid of the answer of the petition for removal." Chuska Energy Co. v. Mobil Explo. & Prod. N. Amer., Inc., 854 F.2d 727, 730 (5ᵗʰ Cir. 1988)(citing Gully, 299 U.S. at 113).

1. Well-Pleaded Complaint Rule

Generally, questions concerning federal question jurisdiction are resolved by application of the "well-pleaded complaint" rule. Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 152-53 (1908)). Under this rule, the plaintiff's properly pleaded complaint governs the jurisdictional inquiry. "If, on its face, the plaintiff's complaint raises no issue of federal law, federal question jurisdiction is lacking." Hart v. Bayer Corp., 199 F.3d 239, 244 (5ᵗʰ Cir. 2000)(citing Franchise Tax Bd., 463 U.S. at 10). "The rule makes the plaintiff master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).

However, even if a plaintiff's well-pleaded complaint does not raise a claim for a violation of federal law, it may present a state law claim involving a substantial federal issue or ingredient that will give rise to federal question jurisdiction. See Grable & Sons Metal Prods., Inc. v. Darue Eng. & Mfg., 545 U.S. 308, 312 (2005)(recognizing that "in certain cases federal question

jurisdiction will lie over state-law claims that implicate significant federal issues").

To establish that a plaintiff's claims involve the resolution of a substantial question of federal law, a defendant must show that: (1) a federal right is an essential element of the plaintiff's state-law claims; (2) interpretation of the federal right is necessary to resolve the case; and (3) the question of federal law is substantial. Howery v. Allstate Ins. Co., 243 F.3d 912, 918 (5th Cir. 2001). In addition to the Howery elements, the Fifth Circuit in an earlier case recognized that a private, federal remedy was a minimum requirement to a determination that a substantial federal question embedded in a state law claim conveyed federal question jurisdiction. Willy v. Coastal Corp., 855 F.2d 1160, 1168-69 (5th Cir. 1988). However, in Grable, the Supreme Court held that the lack of a private right of action under federal law cannot, by itself, divest the court of federal jurisdiction, when a state law claim contains a disputed and substantial question of federal law, so long as the federal and state balance is not disturbed. 545 U.S. at 314-15. "Under this standard, the Court's analysis must be based on whether there is a disputed and substantial question of federal law and whether exercising jurisdiction would disturb the balance between the federal and state judicial responsibilities." Union Pacific R. Co. v. Johnstown Axel Corp., 2007 WL 1174845, *3 (E.D. Mo. 2007)(citing

Grable, 545 U.S. at 314-15).

No issues of federal law appear on the face of the plaintiffs' Complaint.  Moreover, the plaintiffs assert both in their complaint and in their motion to remand that they are not bringing any claims under federal law and that all their claims are based solely on state law.  LTI's argument that federal question jurisdiction exists is based on the fact that the LHWCA prohibits retaliatory discharge with regard to on-the-job injuries, claims under the Act, and the right to receive benefits, whereas Mississippi law does not recognize a cause of action for retaliatory discharge in such circumstances.  LTI's Mem., p. 21.

An analogous situation existed in Adams v. Gen. Motors Acceptance Corp., 307 F.Supp.2d 812 (N.D. Miss. 2004).  The plaintiffs in that case were seeking recovery for fraud allegedly committed by the defendants in the course of automobile financing transactions.  Included in the complaint were allegations that the defendants "conspired to defraud African-American plaintiffs by charging them even higher rates than those charged to similarly-situated white applicants, without informing them that they were being charged higher rates."  Id. at 815.  After the case was removed to federal court, the plaintiffs moved to remand, asserting that they were seeking recovery solely under state law.  The defendants responded that Mississippi law provides no cause of action for race discrimination, and that the plaintiffs' claims

13

therefore must be regarded as federal claims under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq., giving rise to federal question jurisdiction.   Id.   The district court found the defendants' argument to be without merit, explaining:

> It is well established that, under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint." Terrebonne Homecare, Inc. v. SMA Health Plan, Inc., Inc., 271 F.3d 186, 188 (5th Cir. 2001)(quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). "When a plaintiff has a choice between federal and state law claims, she may proceed in state court on the exclusive basis of state law, thus defeating the defendant's opportunity to remove." Medina v. Ramsey Steel Co., 238 F.3d 674, 680 (5th Cir. 2001).

Id. at 815-16.

LTI has failed to show that any of the Howery and Grable elements are satisfied in this case.   The plaintiffs state, and intend to state, causes of action solely under Mississippi law, and expressly deny any attempt to state a cause of action under federal law.   Although their first Complaint contained allegations of "retaliatory discharge," the plaintiffs' present Complaint does not.   As LTI implies, it may be true that, given the limited viability of a wrongful discharge claim under Mississippi law, the plaintiffs' only viable claim is one for retaliatory discharge under the LHWCA; however, that is not sufficient to create federal question jurisdiction. Although the plaintiffs' Complaint arguably contains allegations that could be construed to support a claim under the LHWCA, it is manifest that the plaintiffs do not seek

recovery under that statute.  The plaintiffs are permitted to avoid federal jurisdiction by relying exclusively on state law, thereby "defeating the defendant's opportunity to remove, but taking the risk that [their] federal claims will one day be precluded." Carpenter v. Wichita Falls Ind. Sch. Dist., 44 F.3d 362, 366 (5th Cir. 1995)(citing Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 809 (1986)).  Furthermore, the plaintiffs' state law claims neither require or implicate a substantial federal issue or ingredient that will give rise to federal question jurisdiction. Grable, 545 U.S. at 312.  LTI has failed to carry its burden of establishing that the plaintiffs' complaint "necessarily raise[s] a stated federal issue, actually disputed and substantial." Id., at 314.

## 2. Artful Pleading Doctrine

LTI also alleges that the plaintiffs have engaged in "artful pleading" to avoid federal jurisdiction.  Notice of Remov., ¶ 16. The well-pleaded complaint doctrine precludes removal on the basis of an anticipated or an inevitable federal defense, even when "both parties admit that the only question for decision is raised by a federal preemption defense."  Franchise Tax Bd., 299 U.S. at 111. However, case law provides the following corollary to the well-pleaded complaint doctrine: "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character."  Johnson v. Baylor

<u>Univ.</u>, 214 F.3d 630, 632 (5th Cir. 2000)(quoting <u>Metro. Life Ins.</u>
<u>Co. v. Taylor</u>, 481 U.S. 58, 63 (1987)).  The artful pleading
doctrine relies exclusively on complete preemption.  <u>Waste Control</u>
<u>Specialists, LLC v. Envirocare of Texas, Inc.</u>, 199 F.3d 781 (5th
Cir. 2000)("Without complete preemption, the artful pleading
doctrine does not apply.").[3]

    "'Complete preemption,' which creates federal removal
jurisdiction, differs from more common 'ordinary preemption' ...
which does not." <u>Johnson</u>, 214 F.3d at 632.  Complete preemption is
a narrow exception to the well-pleaded complaint rule and exists
only where the federal statute "so forcibly and completely
displace[s] state law that the plaintiff's cause of action is
either wholly federal or nothing at all." <u>Hoskins v. Bekins Van</u>
<u>Lines</u>, 343 F.3d 769, 773 (5th Cir. 2003)(citing <u>Carpenter</u>, 44 F.3d
at 366).  "[T]o establish federal question jurisdiction through the
invocation of a federal preemption defense, the defendant must
demonstrate that Congress intended not just to 'preempt a state law
to some degree,' but to altogether substitute 'a federal cause of

---

[3] In <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1 (2003), the
Supreme Court noted another form of preemption which can give rise
to federal question jurisdiction, namely "an unusual pre-emption
provision" such as that found in the Price-Anderson Act, 42 U.S.C.
§ 2014(hh), which "not only gives federal courts jurisdiction over
tort actions arising out of nuclear accidents but also expressly
provides for removal of such actions brought in state court even
when they assert only state-law claims." <u>Id</u>. at 6.  Since no
similar provision is found in the LHWCA, this form of preemption is
not relevant to the case <u>sub judice</u>.

action for a state cause of action.'" <u>Hart v. Bayer Corp.</u>, 199 F.3d 239, 244 (5th Cir. 2000)(quoting <u>Schmeling v. NORDAM</u>, 97 F.3d 1336, 1341 (10th Cir. 1996)).

The Fifth Circuit has recognized that the doctrine of complete preemption is to be narrowly applied. <u>Heimann v. Nat'l Elevator Indus. Pension Fund</u>, 187 F.3d 493, 500 (5th Cir. 1999). In fact, the United States Supreme Court has found complete preemption to exist only under the Labor Management Relations Act of 1947 and the Employee Retirement Income Security Act of 1974. <u>El Paso Natural Gas Co. v. Neztsosie</u>, 526 U.S. 473, 484 n.6 (1999) (citing <u>Caterpillar</u>, 482 U.S. at 393-94 (LMRA); <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 65-66 (1987) (ERISA)). In <u>Heimann</u>, the Fifth Circuit, recognizing that the doctrine should be applied with "circumscription," required evidence of clear congressional intent to show that state law claims preempted by federal law were to be removable. <u>Heimann</u>, 187 F.3d at 500; <u>Aaron v. Nat'l Union Fire Ins.</u>, 876 F.2d 1157, 1165 (5th Cir. 1989).

In <u>Aaron</u>, the Fifth Circuit labeled the complete preemption exception to the well-pleaded complaint rule the "<u>Avco</u> exception," since its genesis is found in <u>Avco Corp. v. Aero Lodge No. 735</u>, 390 U.S. 557 (1968). The Fifth Circuit formulated a three-part test for determining whether complete preemption exists. In order to completely preempt state law so as to permit removal to federal court, the federal statute in question must:

> (1) provide a civil enforcement provision that creates a federal cause of action that replaces and protects the same interests as the preempted state law causes of action;
>
> (2) provide a specific jurisdictional grant to the federal courts to enforce the cause of action created by the federal statute; and
>
> (3) reflect a clear congressional intent to make the preempted state claims removable to federal court.

Aaron, 876 F.2d at 1164-65.

In Aaron, the Fifth Circuit was faced with an appeal from a district court's denial of remand based on the district court's finding of complete preemption by the LHWCA.  The Fifth Circuit reversed and remanded with instructions to grant the motion to remand, finding that (1) "[t]he LHWCA contains no civil enforcement provision akin to that in section 301 of the LMRA;" (2) "[t]he LHWCA contains no specific jurisdictional grant similar to those found in ERISA and the LMRA;" and (3) "the legislative history of the statute is devoid of any indication of the kind of congressional intent found to exist with respect to ERISA."  Id. At 1164-65.

In Beneficial, the Supreme Court found that the proper inquiry with respect to the third element should focus "on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable."  Beneficial, 539 U.S. at 9 n.5.  This modification was recognized by the Fifth Circuit in Hoskins v. Bekins Van Lines, 343 F.3d 769,

775–76 (5th Cir. 2003).

Applying the requirements of <u>Aaron</u>, as modified by <u>Beneficial</u> and <u>Hoskins</u>, the Court finds, as the Fifth Circuit did in <u>Aaron</u>, that the alleged preemptive effect of the LHWCA is nothing more than a statutory defense to the plaintiffs' state law cause of action.  Thus, the LHWA does not provide LTI with a basis for removal of the plaintiffs' purely state law claims.  The fact that the plaintiffs assert state law claims which are allegedly not viable does not serve to transform those claims into federal LHWCA claims.  The plaintiffs couch their claims in terms of wrongful termination under state law and specifically reject any recovery under federal law.  The validity of the plaintiffs' state law claims becomes an issue for this Court only in the event that the Court finds it has jurisdiction through some other means.

Federal courts are courts of limited jurisdiction.  <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375, 377 (1994).  A district court must presume that a suit lies outside its limited jurisdiction until the party invoking federal jurisdiction establishes otherwise.  <u>Howery</u>, 243 F.3d at 916.  LTI has not met that burden as to federal question jurisdiction.  Accordingly, the Court lacks jurisdiction under 28 U.S.C. § 1331.

B.  <u>Diversity Jurisdiction</u>

The Court now turns to LTI's alternative ground for removal: diversity jurisdiction.  Specifically, LTI argues that it has been

19

fraudulently misjoined with certain other defendants whose citizenship is not diverse from that of the plaintiffs; therefore, the claims against the non-diverse defendants should be severed from this action and the citizenship of those non-diverse defendants ignored for purposes of determining diversity jurisdiction.

As noted above, the plaintiffs' medical negligence and product liability claims are brought only against defendants Barrett, MBMC, Life Link, and NuTech.  Defendants Barrett and MBMC are citizens of Mississippi, as are the plaintiffs.  The plaintiffs' claims for wrongful discharge, slander, and intentional infliction of emotional distress are brought only against defendant LTI, and the negligence claims are brought only against defendants LTI, Brogan and Drew.  LTI, Brogan and Drew are completely diverse from the plaintiffs.  Therefore, argues LTI, if the medical negligence and product liability claims, which are brought against both diverse and non-diverse defendants, are ignored for purposes of determining diversity of citizenship by applying the doctrine of fraudulent misjoinder, there will be complete diversity among the parties.

The concept of fraudulent misjoinder was first articulated by the Eleventh Circuit in Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir. 1996), abrogated on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000).  Prior to Tapscott, fraudulent joinder provided the sole basis for disregarding the

20

citizenship of a non-diverse party.  <u>See</u>, <u>e.g.</u>, <u>Batoff v. State Farm Ins. Co.</u>, 977 F.2d 848, 851 (3rd Cir. 1992)("When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined.").  Fraudulent joinder may be proven "only upon (1) a showing of actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  <u>Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.</u>, 390 F.3d 400, 405 (5th Cir. 2004).

However, in <u>Tapscott</u>, the Eleventh Circuit held that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." <u>Id</u>. at 1360.  "Fraudulent misjoinder" has been described as a "new form of fraudulent joinder," and "a third type of fraudulent joinder."  14B Wright, Miller & Cooper, FEDERAL PRACTICE & PROCEDURE 3d, § 3723, at 658.

In <u>Tapscott</u>, the plaintiff, on behalf of a putative class, filed suit in state court against four defendants, stating claims for fraud and conspiracy arising from the sale of automotive service contracts sold and financed in Alabama.  <u>Id</u>. at 1355.  Two amended complaints followed, the second adding additional plaintiffs and naming three new defendants, including Lowe's Home

Centers, a North Carolina corporation.  Id.

Unlike the initial and first amended complaints, which centered on automobile service contracts, the second amended complaint alleged violations arising from the sale of extended service contracts for retail products.  Id.  These new "retail class" plaintiffs, all residents of Alabama, were indisputably diverse from Lowe's, but not from the original automotive class defendants, which included several Alabama residents.  Id. at 1359-60.  However, none of the "retail class" plaintiffs stated claims against the original automotive contract defendants.  Id. at 1359.  Lowe's removed the case to the United States District Court for the Northern District of Alabama, claiming "fraudulent joinder," and filed a motion to sever the claims against Lowe's from the claims against the other defendants.  Id. at 1355.  The district court granted the motion to sever and remanded the action to state court as to all defendants except Lowe's.  Id.

The plaintiffs appealed the district court's order severing the claims.  The Eleventh Circuit Court of Appeals upheld the order, agreeing with the district court that a mere allegation of a common business practice was insufficient to permit joinder.  Id. at 1360.  The court characterized the joinder of the Tapscott defendants as "improper and fraudulent joinder, bordering on a sham."  Id.  The court cautioned, however, that "[w]e do not hold that mere misjoinder is fraudulent joinder, but we do agree with

the district court that [the plaintiffs'] attempt to join these parties is <u>so egregious</u> as to constitute fraudulent joinder." <u>Id</u>. (emphasis added).

<u>Tapscott</u>'s fraudulent misjoinder doctrine has not met with resounding approval. "Some district courts have described the <u>Tapscott</u> doctrine as unsupported by Supreme Court authority, contrary to the narrow construction to be given removal statutes, and productive of unnecessary confusion." <u>Accardo v. Lafayette Ins. Co.</u>, 2007 WL 325368, *3 n.5 (E.D. La. Jan. 30, 2007). Commentators have suggested that the doctrine adds further complexity to the federal courts' decision making regarding removal jurisdiction, as well as additional litigation.

> The complexity is increased if the Eleventh Circuit's admonition that not all procedural misjoinder rises to the level of fraudulent joinder is accepted and because numerous additional decisions will be needed to clarify the distinction. In many situations this confusion easily could be avoided by having the removing party challenge the misjoinder in state court before seeking removal. Because removal is not possible until the misjoined party that destroys removal jurisdiction is dropped from the action, the thirty-day time limit for removal (but not the overall one-year limit for diversity cases) would not begin to run until that had occurred and thus a requirement that misjoinder be addressed in the state court would not impair the ability of an individual to remove an action following the elimination of the improperly joined party.

Wright, Miller & Cooper, § 3723 at 658.

"It is worth noting that the Fifth and Eleventh Circuits appear to be the only circuit courts that have endorsed the <u>Tapscott</u> analysis, although district courts in other circuits have

23

also done so." Accardo, 2007 WL 325368 at *3 n.5.  But see Alegre
v. Aguoyo, 2007 WL 141891, *5 n.1 (N.D. Ill. Jan. 17, 2007)("It is
not entirely clear that the Fifth Circuit has 'adopted' the
Tapscott test.").

    Beginning with In re Benjamin Moore & Co. ("Benjamin Moore
I"), 309 F.3d 296 (5th Cir. 2002), the Fifth Circuit has on three
occasions referred to the Tapscott decision.  In Benjamin Moore I,
the defendants sought a writ of mandamus from the Fifth Circuit in
connection with this Court's remand of an action to state court
without addressing the defendants' fraudulent misjoinder argument.
In declining to grant the petition, the Fifth Circuit commented
that "it might be concluded that misjoinder of plaintiffs should
not be allowed to defeat diversity jurisdiction."  Id. at 298.
Subsequently, this Court issued an opinion clarifying its treatment
of the defendants' fraudulent misjoinder argument, stating that the
Court "was aware of the defendants' argument, duly considered it,
and found it to be without merit."  The Court further explained
that it had not initially addressed the argument because the
defendants had presented it in a bare, conclusory fashion, without
argument or evidentiary support.

    The defendants filed a second petition for writ of mandamus,
requesting the Fifth Circuit to (1) address the joinder argument,
(2) sever the improperly joined plaintiffs, and (3) retain
jurisdiction of the claims with completely diverse parties.  The

Fifth Circuit found that the defendants' first request was moot, since this Court had already considered, but rejected the defendants' joinder argument.   In re Benjamin Moore & Co. ("Benjamin Moore II"), 318 F.3d 626, 630 (5th Cir. 2002).  The Fifth Circuit then found that it was without jurisdiction to address the defendants' remaining requests.  "Thus," the court wrote, "without detracting from the force of the Tapscott principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction, we do not reach its application in this case." Id. at 630-31.  Citing Arnold v. State Farm Fire & Casualty Co., 277 F.3d 772, 776 (5th Cir. 2001), and Doleac v. Michalson, 264 F.3d 470, 489 (5th Cir. 2001), the court concluded:

> Under Doleac and Arnold, we do not have jurisdiction to review the district court's decision regarding misjoinder.  Although that decision is separable from, and logically precedes, the remand, it is not conclusive, because the state court can consider misjoinder of the plaintiffs on remand.  Moreover, the decision is not independently reviewable under the collateral order doctrine.  In sum, under Doleac and Arnold, the district court's decision on misjoinder, like its decision to remand the case to state court, is not reviewable "by appeal or otherwise." 28 U.S.C. § 1447(d); Arnold, 277 F.3d at 777.

Benjamin Moore II, 318 F.3d at 631.

In 2006, the Fifth Circuit decided Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d 529 (5th Cir. 2006), an appeal from the Southern District of Texas.  In that case, the plaintiffs filed a wrongful death action in state court against two sets of

defendants, the tobacco defendants and the health care defendants.
Because the plaintiffs and the health care defendants were citizens
of Texas, there was not complete diversity of citizenship; however,
the plaintiffs and the tobacco defendants were diverse.   The
tobacco  defendants  removed,  claiming  that  the  health  care
defendants  had  been  fraudulently  joined.    The  district  court
rejected the fraudulent joinder argument and remanded the action to
state court.   There, the tobacco defendants successfully moved,
over  the  objection  of  the  plaintiffs,  to  sever  the  plaintiffs'
claims against the health care defendants.   Upon issuance of the
severance order, the tobacco defendants again removed, arguing that
severance of the non-diverse parties cured the lack of complete
diversity.   The tobacco defendants also filed a motion for judgment
on the pleadings.   Id. at 531.

The plaintiffs again moved to remand.   Instead of ruling on
the motion to remand, however, the district court granted the
tobacco defendants' motion for judgment on the pleadings.   On
appeal, the plaintiffs did not contest the district court's ruling
on the merits but instead argued that the district court did not
have removal jurisdiction.   Id.

The Fifth Circuit, addressing the removal jurisdiction issue
de novo, began by citing to the following sections of the removal
statute:

> (a) ... any civil action brought in a State court of
> which the district courts of the United States have

original jurisdiction, may be removed by the defendant or
the defendants, to the district court of the United
States for the district and division embracing the place
where such action is pending.

28 U.S.C. § 1441(a).

(b) Any civil action of which the district courts have
original jurisdiction founded on a claim or right arising
under the Constitution, treaties or laws of the United
States shall be removable without regard to the
citizenship or residence of the parties.  Any other such
action shall be removable only if none of the parties in
interest properly joined and served as defendants is a
citizen of the State in which such action is brought.

28 U.S.C. § 1441(b).

(b) The notice of removal of a civil action or proceeding
shall be filed within thirty days after the receipt by
the defendant, through service or otherwise, of a copy of
the initial pleading setting forth the claim for relief
upon which such action of proceeding is based, or within
thirty days after the service of summons upon the
defendant if such initial pleading has then been filed in
court and is not required to be served on the defendant,
whichever period is shorter.

If the case stated by the initial pleading is not
removable, a notice of removal may be filed within thirty
days after receipt by the defendant, through service or
otherwise, of a copy of an amended pleading, motion,
order or other paper from which it may first be
ascertained that the case is one which is or has become
removable, except that a case may not be removed on the
basis of jurisdiction conferred by section 1332 of this
title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b).

The Fifth Circuit found that the case was initially

nonremovable because of the presence of the non-diverse health care

defendants.  The tobacco defendants argued that the state court's

severance order qualified as an "order or other paper from which it

may first be ascertained that the case is one which ... has become removable." Id. at 532 (quoting § 1446(b)).  The plaintiffs counter-argued that the judicially created "voluntary-involuntary" rule barred removal because only voluntary acts of the plaintiff can make an initially nonremovable action removable, and the severance order making removal possible was involuntary on the part of the plaintiffs.  Id.

The Fifth Circuit rejected the plaintiffs' argument, citing to the "long recognized" exception to the voluntary-involuntary rule where a non-diverse defendant is fraudulently joined.  Although there had been no finding of fraudulent joinder (the district court initially remanded the case after finding no fraudulent joinder, and the state court's order of severance could not be considered a finding of fraudulent joinder), the Fifth Circuit noted that "[a] party ... can be improperly joined without being fraudulently joined."  Id. at 533.  Citing to Fed.R.Civ.P. 20 and Tex.R.Civ.P. 20, the court found that if Rule 20's requirements for proper joinder are not met, "joinder is improper even if there is no fraud in the pleadings and the plaintiff does have the ability to recover against each of the defendants."  Id. (citing Tapscott, 77 F.3d at 1360).

In Crockett, the state court had severed the plaintiffs' claims against the health care defendants from their claims against the tobacco defendants because "the medical negligence and

28

malpractice claim and the burden of proof to sustain [that] claim is totally different [from] the burden of proof ... necessary to secure judgment for product liability." Id. (citing Crockett v. R.J. Reynolds Tobacco Co., No. 03CV1391 (10th Dist. Ct., Galveston County, Tex., Aug. 18, 2004)(transcript of hearing on defendants' motion to sever)).  The Fifth Circuit noted:

> The fraudulent joinder exception to the voluntary-involuntary rule is designed to prevent plaintiffs from blocking removal by joining nondiverse and/or in-state defendants who should not be parties.  That salutary purpose is also served by recognizing an exception to the voluntary-involuntary rule where defendants are improperly, though not fraudulently, joined.  We therefore conclude that removal on the basis of an unappealed severance by a state court, of claims against improperly joined defendants is not subject to the voluntary-involuntary rule.

Id.  In support of this conclusion, the Fifth Circuit cited the text of § 1441(b), "which does not refer to 'nonfraudulently joined' parties.  Rather it blocks removal only where 'properly joined' defendants are citizens of the state in which the action is brought."  Id. at 533 n.7.

Although none of these three Fifth Circuit opinions addresses application of Tapscott by a federal district court in this circuit directly, the three opinions collectively suggest that the Fifth Circuit recognizes the Tapscott principle and would apply it in the proper circumstances.

In fact, based on Benjamin Moore I & II and/or Crockett, most district courts within this circuit have taken the position that

the Fifth Circuit has adopted, or at least appears to have adopted, Tapscott. See, e.g., Touro Infirmary v. American Maritime Officer, 2007 WL 4181506, *7 (E.D. La. Nov. 21, 2007)("has appeared to adopt"); Turner v. Murphy Oil USA, Inc., 2007 WL 2407310, *5 (E.D. La. Aug. 20, 2007)(same); Accardo v. Lafayette Ins. Co., 2007 WL 325368, *2 (E.D. La. Jan. 30, 2007)("appears to have adopted"); Moote v. Eli Lilly & Co., 2006 WL 3761907, *2 (S.D. Tex. Dec. 21, 2007)(assuming, without stating, that the Fifth Circuit has adopted Tapscott); Rice v. Pfizer, Inc., 2006 WL 1932565, *3 (N.D. Tex. July 7, 2006)(same); Barnes v. Vistar Ins. Services, Inc., 2006 WL 1806468 (S.D. Miss. June 29, 2006)(Starrett, J.)(same); Boteler v. Pleko Southeast Corp., 2006 WL 136487, *1 (S.D. Miss. May 16, 2006)(Lee, J.)("endorsed"); Reed v. American Medical Security Group, Inc., 324 F.Supp.2d 798, 803 (S.D. Miss. 2004)(Lee, J.)("the undersigned, as well as a number of other judges in this district and in the Northern District of Mississippi, have concluded that in this circuit, misjoinder is a viable basis for removal in a proper case"); Jones v. Nastech Pharmaceutical, 319 F.Supp.2d 720, 725 (S.D. Miss. 2004)(Pickering, J.)("The Fifth Circuit has instructed district courts to look at the issue of egregious misjoinder when considering motions to remand.").  Although many of the cases applying Tapscott in the Southern District of Mississippi have distinguished Tapscott on the facts and found no fraudulent misjoinder, a few cases, e.g. Jones and Reed, have reached the

conclusion that parties were fraudulently misjoined.

Before proceeding further, the Court must decide how to apply Tapscott, there being no clear directive from the Fifth Circuit. See Walton v. Tower Loan of Mississippi, 338 F.Supp.2d 691, 695 (N.D. 2004)(noting that "the governing legal standards regarding the fraudulent misjoinder doctrine are far from clear," and that the Fifth Circuit has "provided no guidance as to the circumstances, if any, under which this doctrine should be applied in this circuit").

The first determination to be made is whether, when considering the joinder of the parties, a court should rely on Rule 20 of the Federal Rules of Civil Procedure or its state law counterpart, in this case Rule 20 of the Mississippi Rules of Civil Procedure.   See Jackson v. Truly, 307 F.Supp.2d 818, 823 (N.D. Miss. 2004)(noting "considerable disagreement" at the time among the federal district courts in Mississippi concerning this issue). Prior to the Mississippi Supreme Court's decision in Janssen Pharmaceutica, Inc. v. Armond, 866 So. 2d 1092 (Miss. 2004), Mississippi's Rule 20 was perceived as having "been given an extraordinary broad interpretation that 'allow[s] virtually unlimited joinder at the pleadings stage.'" Jamison, 251 F.Supp.2d 1315, 1320 (S.D. Miss. 2003)(quoting Miss.R.Civ.P. 20, Comments). This broad interpretation stemmed in part from "the unavailability of class actions under the State's laws, and the desire to 'better

accommodate parties who are consequently shut out of the legal system.'" Id. (quoting American Bankers, Ins. Co. of Florida v. Alexander, 818 So.2d 1073, 1078 (Miss. 2001)).

In Armond, decided February 19, 2004, the Mississippi Supreme Court reversed a trial court's decision to allow joinder under Miss.R.Civ.P. 20 in a suit "which involve[d]: multiple diverse plaintiffs suing multiple diverse defendants; combinations of medical malpractice, products liability, and other diverse claims; complex causation issues with voluminous amounts of evidence; and potentially large damage awards." 866 So.2d at 1094. The court held that "a trial court ... abuses its discretion by joining parties in cases failing to satisfy the two requirements of Rule 20." Id. at 1097. One day later, on February 20, 2004, the Mississippi Supreme Court amended the comments to Miss.R.Civ.P. 20 to clarify that the phrase "same transaction or occurrence" means that there must be "a distinct litigable event linking the parties." Miss.R.Civ.P. 20, Comments (as amended February 20, 2004). The amendments also struck the prior language permitting "virtually unlimited joinder at the pleadings stage." Id.

The choice of whether to apply Mississippi Rule of Civil Procedure 20 or its federal counterpart remains important, however, because if Miss.R.Civ.P. 20 applies, then Mississippi law interpreting the rule also applies. For example, the comments to Miss.R.Civ.P. 20 state that the "same transaction or occurrence"

element requires a finding that there is "a distinct litigable event linking the parties." By contrast, "same transaction or occurrence" under Fed.R.Civ.P. 20 has been interpreted as requiring only "'logically related' events." See Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974)(citing Moore v. New York Stock Exch., 270 U.S. 593, 610 (1926); 7 C. Wright, FEDERAL PRACTICE & PROCEDURE § 1653 at 270 (1972)); see also Mississippi Life Ins. Co. v. Baker, 905 So.2d 1179, 1183 (Miss. 2005)(noting the distinction).

In Tapscott, the Eleventh Circuit applied Federal Rule of Civil Procedure 20 to the joinder issue. 77 F.3d at 1360. However, in Conk v. Richards & O'Neil, L.L.P., 77 F.Supp. 2d 956 (S.D. Ind. 1999), the district court stated that Tapscott notwithstanding,

> the court is not persuaded that the Federal Rules of Civil Procedure provide the governing legal standard. After all, when [the plaintiff] filed his complaint in the [state] court, he was not required to comply with the Federal Rules of Civil Procedure in terms of joinder of parties or claims ... [T]he court believes the controlling standard is essentially the same that applies to fraudulent joinder: Is there a reasonable possibility that a state court would find that Conk's claims against Leonard were properly joined with his claims against the other defendants?

Id. at 971. Thus, the court in Conk concluded that the correct standard for determining proper joinder, in a case removed from state court, should be one analogous to the fraudulent joinder standard, i.e., whether there is a reasonable possibility that a

state court would find that the plaintiff has stated a viable cause of action against the resident defendant.  The court also noted that because Indiana Rule of Civil Procedure 20 and the federal rule closely parallel each other, "the difference between applying federal and state standards for joinder may be more theoretical than practical in this case." <u>Id</u>.  Nevertheless, the court concluded that the proper standard is whether "[t]here is a reasonable possibility that an Indiana court would find that Conk's claims against all defendants are all logically related." <u>Id.</u> at 972.

In <u>Jamison</u>, this Court found <u>Conk</u>'s analysis persuasive.  251 F.Supp.2d at 1321 n.6.  This Court acknowledges the clear statement of Fed.R.Civ.P. Rule 81(c), applying the federal rules to cases removed from state court; however, Fed.R.Civ.P. 82 admonishes the Court that "[t]hese rules shall not be construed to extend or limit the jurisdiction of the [district courts]."  It is this Court's opinion that a district court may run afoul of Rule 82 if it uses a federal rule to determine if the plaintiff's claims were properly joined under state law at the time of removal.

The approach suggested by <u>Conk</u> allows severance of claims only when those claims were improperly joined under state law at the action's inception.  This approach shares the same conceptual rationale underlying the doctrine of fraudulent joinder.  In both instances, a court, in examining its own jurisdiction, attempts to

34

identify a glaring infirmity in the plaintiff's complaint under the law of the state in which it was originally brought.   Stated differently, under both (1) the traditional fraudulent joinder analysis and (2) the <u>Conk</u> approach to the newer fraudulent misjoinder analysis, the district court simply looks to what the state court would do.  By utilizing the state rule 20, the district court recognizes the contours of its own jurisdiction in relation to the action as it was originally brought.   Under the <u>Conk</u> approach there is neither danger of aggrandizement of federal jurisdiction nor an affront to the notion of federalism.   This Court will therefore apply Rule 20 of the Mississippi Rules of Civil Procedure.

Mississippi's Rule 20 provides, in pertinent part:

> **(a) Permissive Joinder**.  All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these persons will arise in the action.  All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all defendants will arise in the action.

Miss.R.Civ.P. 20(a).

As noted above, both the "same transaction, occurrence, or series of transactions or occurrences," and the "any question of law or fact common to all" prongs must be met in order for joinder

to be proper.  Baker, 905 So.2d at 1187 (citing Miss.R.Civ.P. 20(a), Comments).  In addition, the transaction or occurrence prong requires the presence of a "distinct litigable event linking the parties."  Janssen Pharmaceutica Group, Inc. v. Bailey, 878 So.2d 31, 46 (Miss. 2004)(citing Miss.R.Civ.P. 20(a), Comments).

The majority of cases, both state and federal, applying Mississippi's Rule 20 involve the joinder of multiple plaintiffs. However, there are several cases addressing the joinder of defendants which merit examination.

Winston v. TB of Mississippi, Inc., 2001 WL 588926 (N.D. Miss. March 12, 2001), involved a single plaintiff suing over two separate slip-and-fall accidents.  The first occurred on February 28, 1997, at a Taco Bell restaurant, and the second occurred on June 27, 1998, at a Fred's Store.  Fred's removed to federal court on the basis of diversity jurisdiction, and filed a motion to sever under Fed.R.Civ.P. 21,[4] asserting that the only non-diverse defendants in the action were two employees of Taco Bell, and that claims involving the Taco Bell accident should be severed from

---

[4] Rule 21 of the Federal Rules of Civil Procedure provides:

**Rule 21. Misjoinder and Non-Joinder of Parties**
   Misjoinder of parties is not ground for dismissal of an action.  Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Fed.R.Civ.P. 21.

those involving the Fred's accident.

Although a motion to remand was filed by the plaintiff, the district court did not initially address whether it had subject matter jurisdiction and therefore removal jurisdiction; instead, the court considered the Rule 21 motion first.  In its Rule 21 motion, Fred's argued that pursuant to Fed.R.Civ.P. 20, it had been improperly joined inasmuch as the suit involved "two separate alleged acts of negligence on two separate and distinct dates and not arising out of the same transaction or occurrence." Id. at *2. The court agreed, finding that "the two incidents the Plaintiff complains of [did] not stem from a common transaction or event; rather they stem from separate and unrelated slip-and-fall incidents, occurring under completely different factual circumstances at two separate businesses, well over a year apart." Id.  Because the claims were "unrelated in any significant way, involve[d] entirely different circumstances, and the facts required to prove one claim [would] be wholly irrelevant to the other," the court found "that the two incidents [did] not amount to a series of transactions or occurrences," so that joinder of Fred's as a defendant in the state court action was improper pursuant to Fed.R.Civ.P. 20.

Presumably, the result in this case would have been the same had the district court first addressed the plaintiff's motion to remand and applied Tapscott, and if the court had applied

37

Miss.R.Civ.P. 20 instead of Fed.R.Civ.P. 20, but the court did neither of these.  Use of the federal rule instead of the state rule was not significant in this particular case since even under the then-existing "liberal joinder" interpretation of Miss.R.Civ.P. 20, joinder would have been improper.  However, by deciding the severance issue exclusive of the jurisdictional issue raised in the motion to remand, the court ran the risk of extending its jurisdiction beyond the dictates of Fed.R.Civ.P. 82.

"The existence of subject-matter jurisdiction over an action is a prerequisite to its removal to federal court."  Bromwell v. Michigan Mut. Ins. Co., 115 F.3d 208, 212 (3rd Cir. 1997)(citing 28 U.S.C. § 1441).  "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible without exception.'"  Steel Co. v. Citizens for a Better Environ., 523 U.S. 83, 94-95 (1998)(quoting Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382(1884)).  "Much more than legal niceties are at stake here.  The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times ...."  Steel Co., 523 U.S. at 101 (citations omitted).  See also Harden v. Field Memorial Comm. Hosp., 2008 WL 444546, *2 (5th Cir. Feb. 19, 2008)(noting that if the court had considered a motion to dismiss before deciding the plaintiff's

motion to remand, "it would have run the risk of acting without jurisdiction"); <u>Lyons v. Lutheran Hosp. of Indiana</u>, 2004 WL 2272203, *6 (S.D. Ind. Sept. 15, 2004)("The use of Rule 21 to expand a federal court's jurisdiction ... does not appear to be an option.").

<u>Winston</u> preceded <u>Benjamin Moore I</u> by eighteen months.   One year after <u>Benjamin Moore I</u> was decided, the joinder of defendants was again at issue in <u>Smith</u>, <u>supra</u>, and this time the district court applied both <u>Tapscott</u> and Miss.R.Civ.P. 20.   In <u>Smith</u>, the plaintiffs brought suit in state court against the owners of a bushhog mower, the mower's manufacturer and its seller for negligence relating to an automobile accident in which the plaintiffs were injured.   The plaintiffs also sued their own automobile insurer alleging breach of contract for failure to pay uninsured motorist benefits, and their medical benefit plan and plan administrator alleging tortious interference with contract for improperly asserting a subrogation claim against their automobile insurer.   <u>Smith</u>, 286 F.Supp.2d at 778.

After removal, the plaintiffs moved to remand based on lack of diversity jurisdiction, since the owners of the mower were, like the plaintiffs, residents of Mississippi.   The defendants responded that there <u>was</u> complete diversity of citizenship because the owners were fraudulently joined or fraudulently misjoined in the lawsuit. <u>Id</u>. at 780.   Grafting the principle of <u>Tapscott</u> onto existing Fifth

Circuit law, the court noted that "[i]f a party is fraudulently joined _(or mis-joined)_, then the court does not consider that party's citizenship in determining whether diversity of citizenship exists." Id. (citing Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir. 1993))(emphasis added).

The court found that the plaintiffs had "combined unrelated lawsuits resulting in a fraudulent misjoinder of claims to defeat this court's jurisdiction." Id. at 781. The court granted the defendants' motion to sever the two sets of claims, remanded the negligence action to state court, and retained jurisdiction over the contract and tortious interference with contract action based on diversity jurisdiction. Id. Although the court invoked Tapscott, and its standard that misjoinder must be "so egregious as to constitute fraudulent joinder," id. (citing Tapscott, 77 F.3d at 1360), the court did not elaborate on its basis for finding fraudulent misjoinder as opposed to "mere" misjoinder. However, the court did refer to Tapscott's pronouncement that "where a plaintiff's claims against different defendants have no real connection, the claims should be severed from one another," and to the defendants' argument that "this is particularly so where the joining of the claims operate[s], like fraudulent joinder, to defeat federal jurisdiction." Id.

Mercer v. Moody, 918 So.2d 664 (Miss. 2005), addressed Rule 20 joinder in the context of a case arising from an accident between

an automobile and a calf.  Moody, the driver of the vehicle, sued
Mercer, the calf's owner, for monetary damages.  Moody also sued
Mercer's insurer, State Farm, seeking a declaration of coverage.
In addition, Moody sued his own employer's workers' compensation
insurance carrier, Brierfield Insurance Company, seeking a
declaration regarding Brierfield's statutory lien which arose from
its payment of worker's compensation benefits to Moody.  Id. at
666.

Moody used the presence of defendant Brierfield to set venue
in Hinds County, where Brierfield was served.  Mercer moved for a
change of venue, arguing that venue was proper only in Perry
County, where Mercer resided, or in Greene County, where Moody
resided and where the accident occurred.  Following denial of his
motion, Mercer filed an interlocutory appeal arguing that
Brierfield was improperly joined as a defendant.

The Mississippi Supreme Court, applying Rule 20, found that
the "same transaction or occurrence" requirement of Rule 20(a) was
satisfied, because "any potential claims Moody had against either
Mercer or Brierfield arose out of one distinct event, the accident
of March 14, 2001."  Id. at 667.  However, as to the "common issue
of law or fact" prong, the court found that Moody was not allowed
to sue Brierfield for a declaratory judgment, since Brierfield had
not denied coverage.  Id. at 667-68 (citing Poindexter v. Southern
United Fire Ins. Co., 838 So.2d 964, 966, 968 (Miss. 2003)).  In

41

fact, Brierfield had not only admitted coverage, it had already paid Moody for his losses. Id. at 668. Finding no common issue of law or fact between Moody's claims against Brierfield and his claims against Mercer and Mercer's insurer, the court remanded with instructions that Brierfield be dismissed from the case. Id.

In Mohamed v. Mitchell, 2006 WL 212218 (N.D. Miss. Jan. 24, 2006), the plaintiff's negligence claim against the non-diverse tortfeasor was joined with a claim by the plaintiff against her own insurer for breach of contract. Following removal by the defendants on the basis of improper joinder of claims, and the filing of a motion to remand by the plaintiff, the district court applied Tapscott and Miss.R.Civ.P. 20 and rejected the defendants' misjoinder argument. Relying on Mercer, the court found that common questions of law and fact linked the plaintiff's allegations to all of the defendants, and that the claims asserted against all defendants stemmed from the same transaction or series of transactions. Id. at *2. Like the district court in Smith, the court noted Tapscott's distinction between "mere" misjoinder and fraudulent misjoinder, the latter requiring "totally unsupported or 'egregious' misjoinder." Id. at *1. Also as in Smith, the court did not elaborate on any standard it used to find egregious misjoinder, merely noting that "in determining whether any such egregious misjoinder has taken place in this case, Rule 20 of the Mississippi Rules of Civil Procedure applies." Id. (citations

42

omitted).

In Boteler v. Pleko Southeast Corp., 2006 WL 1364387 (S.D. Miss. May 16, 2006), the plaintiff, a Mississippi resident, sought to recover damages he allegedly sustained as a result of the failure of his home's exterior insulation system.  He sued various persons and entities that manufactured, designed, marketed, sold and installed the system (the "Stucco defendants"), including one Mississippi corporation.  He joined with these claims a declaratory judgment action against a number of nonresident insurers (the "insurance defendants") seeking a declaration that they had a duty to indemnify their insureds in connection with the plaintiff's claims.  Id. at *1.

The insurance defendants removed on the basis that the declaratory judgment action against them had been fraudulently misjoined with the negligence action against the other defendants. In deciding the plaintiff's motion to remand, the court applied Tapscott and Mississippi's Rule 20.  It noted that the Mississippi Supreme Court allowed a plaintiff to bring a declaratory judgment action against a defendant tortfeasor's insurance carrier "to determine coverage 'in the underlying action.'" Id. at *2 (citing Lewis v. Allstate Ins. Co., 730 So.2d 65, 71 (Miss. 1998)).  In addition, Mississippi's Rules of Civil Procedure were amended in 2000 to authorize an injured party, where an insurer has indicated that it may deny coverage of the injured party's claim, to seek a

declaratory judgment establishing coverage. _Id_. at *3 (citing Miss.R.Civ.P. 57(b), Comments (as amended July 27, 2000)).

The court acknowledged that Rule 57's recognition that an injured party may sue his tortfeasor's insurer for a declaratory judgment on coverage does not necessarily mean that such a claim is properly joined with the plaintiff's claim against the torfeasor. _Id_. at *4. However, the court found that joinder _is_ allowed by _Lewis_. _Id_. ("[T]he court's remarks in _Lewis_ ... are the most direct pronouncement of the Mississippi Supreme Court's position on the propriety of joining a declaratory judgment action to determine insurance coverage with an underlying claim."). Moreover, the district court noted that in _Mercer_ the Mississippi Supreme Court had "found the 'same transaction' requirement satisfied notwithstanding that one claim involved a tortfeasor's negligence and the other an insurer's alleged contractual obligations under its insurance policy." _Id_. at *5.

The insurance defendants argued that, even if the "same transaction" requirement was met, there was no common question of law or fact to justify the joinder. _Id_. The district court disagreed, finding that

> it seems likely that the claims have at least one common issue of fact, and perhaps more. Plaintiff points out, for example, that whereas defendants have themselves contended that the question of when the subject property was built or remodeled is "critical to the coverage determination," the same information is necessary for plaintiff to demonstrate the state of industry knowledge during the relevant time period in order to establish his

> misrepresentation and negligent design and marketing
> claims against the Stucco defendants.  Further, he
> states, the conduct of the Stucco defendants is likewise
> as relevant to a determination of whether they acted
> within the scope of their coverage as it is to a
> determination of whether they are liable to plaintiff.

Id.

The court noted its agreement with Mohamed, which had also relied on Mercer, id. at *5, and concluded that it could not find that the claims against the Stucco defendants "have been misjoined, much less egregiously misjoined,"[5] with the declaratory judgment action against the insurer defendants.  Id.

The court also mentioned the seemingly contrary holding of Smith, in which the district court found misjoinder of a negligence claim against the tortfeasor and a contract claim against the plaintiff's uninsured motorist carrier for failure to make medical payments.  The court found that Smith did not appear to be consistent with the Mississippi Supreme Court's later opinion in Mercer.  Id. at *6 n.2.

In Hegwood v. Williamson, 949 So.2d 728 (Miss. 2007), the Mississippi Supreme Court again confronted an interlocutory appeal on a joinder issue involving an automobile accident.  The plaintiff, Williamson, sued Hegwood and Hegwood's insurer, State Farm.  Hegwood moved to sever the claims against her from the claims against State Farm.  The motion was denied, and Hegwood

---

[5] The court did not venture a definition of "egregious" misjoinder.

45

appealed.

In this case, Williamson alleged that Hegwood was at fault, and Hegwood alleged that Williamson was at fault.  Both women were insured by State Farm.  Hegwood had an automobile liability policy with State Farm, and Williamson had a comprehensive automobile policy with State Farm.  Because Hegwood's policy limits were not sufficient to cover the entire amount of damages sought by Williamson, Williamson filed two claims against State Farm: (1) a third-party claim for bodily injury and medical expenses under Hegwood's policy, and (2) a first-party claim for bodily injury and medical expenses under her own policy.  In addition, Williamson brought claims against State Farm for breach of contract and bad faith.[6]

The Mississippi Supreme Court first addressed whether both prongs of Miss.R.Civ.P. 20 were met, and noted that for an alleged "occurrence" to be sufficient, there must be a "distinct litigable event linking the parties." Id. at 730 (quoting Wyeth-Ayerst Labs. v. Caldwell, 905 So.2d 1205, 1208 (Miss. 2006)).  In determining whether there is a distinct litigable event linking the parties, courts should consider:

---

[6] State Farm had assigned one adjuster to Williamson's claims on the Hegwood policy and another adjuster to Williamson's claims on her own policy.  Williamson alleged that the adjuster assigned to the claim on her own policy told the other adjuster that Williamson admitted to being fifty percent at fault for the accident. Williamson denied making such a statement, and sued State Farm for breach of contract and bad faith.

> "whether a finding of liability for one plaintiff
> essentially establishes a finding for all plaintiffs,
> indicating that proof common to all plaintiffs is
> significant. The appropriateness of joinder decreases as
> the need for additional proof increases. If plaintiffs
> allege a single, primary wrongful act, the proof will be
> common to all plaintiffs; however separate proof will be
> required where there are several wrongful acts by several
> different actors.   The need for separate proof is
> lessened only where the different wrongful acts are
> similar in type and character and occur close in time
> and/or place."

Id. at 730-31 (quoting Illinois Cent. R.R. v. Gregory, 912 So.2d

829, 834-35 (Miss. 2005).

The Mississippi Supreme Court found that the trial court

should have severed the claims, since the negligence claim and the

first party breach of contract and bad faith claims involved

distinct litigable events.   Id. at 731. These claims arose

> out of separate allegations of wrongdoing occurring at
> separate times.   While it is true that the genesis of
> both claims arose out of the accident, the two claims
> involve different factual issues and different legal
> issues.   The car accident raises fact issues of how the
> accident occurred and legal issues of simple negligence
> (duty, breach of duty, proximate causation, and damages).
> The breach of contract and bad faith claims raise fact
> issues of what occurred between the two insurance
> adjusters and how they made their decisions and legal
> issues of interpretation of insurance policies and bad
> faith under which an award of punitive damages may or may
> not be appropriate.   The negligence claim would be proven
> by different witnesses (the two drivers, eyewitnesses to
> the accident, law enforcement, and accident re-enactment
> experts) from that of the bad faith claim (insurance
> agents and management).

Id. at 731.

The court also pointed out that Rule 411 of the Mississippi

Rules of Evidence provides that "'[e]vidence that a person was or

47

was not insured against liability is not admissible upon the issue
whether he acted negligently or otherwise wrongfully.'"   <u>Id</u>.
(quoting Miss.R.Evi. 411).   In conclusion, the Mississippi Supreme
Court found that severance should have been granted by the lower
court because (1) "[n]either prong of Rule 20(a) is met, and
Hegwood would be unduly prejudiced because, if the two claims were
tried together, the fact that she had liability insurance would be
placed squarely before the jury."   <u>Id</u>.

        The foregoing review of case law relevant to the fraudulent
misjoinder analysis supports the axiom that in deciding joinder
issues each case must turn on its own unique circumstances.   <u>See</u>
<u>Hegwood</u>, 949 So.2d at 730 ("Cases involving a question of the
propriety of Rule 20(a) joinder are reviewed on a case by case
basis.").   The cases also illustrate how the law on joinder as to
particular types of claims can be in a state of flux.   This
provides a compelling reason to apply the state law of joinder,
which all of the federal district court cases except <u>Winston</u> did.

        On the other hand, the district court cases do not offer much
in the way of a definition or standard of "fraudulent misjoinder."
Before proceeding further, the Court must decide what standard to
use when deciding if the claims against the defendants were
fraudulently misjoined in this case.   Specifically, the Court must
decide whether to apply <u>Tapscott</u>'s "egregious misjoinder" standard.

        As it did in <u>Jamison</u>, the Court turns to <u>Conk</u> for guidance on

48

this issue.  In Conk, the district court for the Southern District of Indiana, citing Wright and Miller, noted the view that Tapscott's "'admonition that not all procedural misjoinder rises to the level of fraudulent joinder' has added to the complexity of removal jurisdiction."  Conk, 77 F.Supp.2d at 971 (citing Wright, Miller & Cooper, § 3723 at 658).  See also Burns v. Western Southern Life Ins. Co., 298 F.Supp.2d 401, 403 (S.D. W.Va. 2004)("egregiousness" requirement adds "a very subjective and troublesome element of complexity to an already knotty calculus"); Rutherford v. Merck & Co., Inc., 428 F.Supp.2d 842, 853 (S.D. Ill. 2006)("Many courts have foundered on shoals of tautology in trying to define fraudulent misjoinder."); Murphy Constr. Co. v. St. Bernard Parish, 2007 WL 442231 (E.D. La. Feb. 6, 2007)("courts have questioned whether Tapscott's distinction between mere misjoinder and egregious misjoinder might be so subjective as to be unworkable").

In Conk, the district court's solution was to forgo Tapscott's requirement of "egregious misjoinder," and adopt as the controlling standard "essentially the same [standard] that applies to fraudulent joinder: Is there a reasonable possibility that a state court would find that [the plaintiff's] claims against [the defendant] were properly joined with his claims against the other defendants?"  Id.  This standard was also adopted in Moore v. Smith-Kline Beecham Corp., 219 F.Supp.2d 742, 746 (N.D. Miss.

2002)(finding that the joinder of plaintiffs was not egregious because there was "at least a possibility that the state court would find joinder proper in this case").

This Court also adopts the fraudulent joinder-like standard for purposes of deciding the fraudulent misjoinder issue. The Court finds that this standard is compatible with the use of the state procedural rule to determine the issue of fraudulent misjoinder. Removal and severance will be allowed only if claims were improperly joined under state law at the action's inception. The standard also protects both the right of a plaintiff to choose his own forum and the right of a defendant to remove to a federal forum when faced with misjoinder in the state court. As long as there is a reasonable possibility that the state court would find joinder proper, the plaintiff's right to a state forum prevails, but if there is no reasonable possibility that the state court would find joinder proper, the defendant is entitled to removal and severance. Under this standard, the lack of a reasonable possibility that the state court would allow the joinder renders the claims or parties "fraudulently misjoined."

Applying this standard to the facts of this case, the Court finds that the plaintiffs' claims against the medical defendants were fraudulently misjoined with those against the employer defendants. As for the first requirement of Miss.R.Civ.P. 20, there is no transaction or occurrence, or series of transactions or

occurrences, linking the two sets of defendants because there is no distinct litigable event linking the parties.

The plaintiffs claim that "it is the work-related accident that is the central event which binds all parties in this action." Plaintiffs' Mem., p. 4.  While it is true that the work-related accident may have some relevance to damages in the claims against the medical defendants, it is not a "linking" event joining the two sets of defendants.  The medical defendants are sued for medical malpractice and product liability in connection with Richard Palermo's surgery which was related to his accident at work.  The employer defendants are sued for wrongful discharge, slander, intentional infliction of emotional distress, and negligence in connection with the administration of a drug test, claims which are in no way related to the accident.

Neither is the second requirement of Miss.R.Civ.P. 20 met.  The plaintiffs fail to identify, nor can the Court can find, any question of law or fact common to the two sets of defendants.  The plaintiffs contend that the issue of damages presents common questions of law and fact, and that damages must be apportioned among all the defendants.  Plaintiffs' Rebut. Mem., p. 4.  Specifically, the plaintiffs argue: "Common damages such as physical, mental and emotional damages, as well as lost wages and future wage-earning capacity could be attributed to more than one Defendant for actions which may not have been 'joint' in nature but

which were proximately caused by or proximately contributed to by the Defendants." Id.

It is true that under Mississippi law "when concurrent negligence on the part of several defendants produces an indivisible injury, all tort-feasors are liable, even in the absence of a community of design." Howard v. General Motors Corp., 287 F.Supp. 646 (N.D. Miss. 1968)(citing Mississippi Cent. R. Co. v. Roberts, 160 So. 604 (Miss. 1935)). Mississippi law provides that defendants be tried together when there is joint and several liability for damages. Adams v. Baptist Memorial Hosp.-DeSoto Inc., 965 So.2d 652, 655 (Miss. 2007). However, as even the plaintiffs seem to admit, there is no basis for finding joint and several liability for damages between the two sets of defendants in this case. It is not alleged that the independent tortious acts of the two sets of defendants concurred in producing any common indivisible injury to the plaintiffs. The injuries alleged against the two sets of defendants are separate and distinct, and there is no common question of law or fact concerning proximate cause or damages.

The plaintiffs cannot meet either of the requirements of Miss.R.Civ.P. 20 for proper joinder, and defendant LTI has therefore succeeded in showing that there is no reasonable possibility that the state court would find joinder proper. The Court concludes that LTI's right to statutory removal has been

frustrated by the plaintiffs' fraudulent misjoinder of the claims against the medical defendants, which include non-diverse defendants.[7]    The claims against the medical defendants shall therefore be severed from those against the employer defendants. Inasmuch as there is complete diversity between the plaintiffs and the employer defendants, the Court shall retain jurisdiction over those claims.    However, since there is not complete diversity between the plaintiffs and the medical defendants, those claims shall be remanded to the state court.    The plaintiff's motion to remand shall be granted as to the claims against the medical defendants and denied as to the claims against the employer defendants.    Accordingly,

IT IS HEREBY ORDERED that the plaintiffs' Motion to Remand **(docket entry 19)** is GRANTED IN PART AND DENIED IN PART as follows:

GRANTED as to the plaintiffs' claims against defendants Gene R. Barrett, M.D., Mississippi Baptist Medical Center, Life Link Tissue Bank, Inc., and NuTech Medical, Inc;

DENIED as to the plaintiffs' claims against defendants

---

[7] The court reaches this conclusion using the fraudulent joinder-like standard outlined above for determining fraudulent misjoinder. To the extent that "egregiousness" may nevertheless be required by the Fifth Circuit, the Court finds that the requirement is met by the absence of a reasonable possibility that the state court would find joinder proper in this case.    Alternatively, the Court finds that even under a stricter standard of "egregiousness," the joinder in this case qualifies as fraudulent misjoinder because it is grossly improper, totally unsupported, and lacks any colorable basis.

LeTourneau Technologies, Inc., Kristy Brogan, and Daniel C. Drew d/b/a Nationwide Medical Review.

A separate Order of Partial Remand shall be entered, remanding the plaintiffs' claims against defendants Barrett, MBMC, Life Link, and NuTech to the Circuit Court of Warren County, Mississippi.

SO ORDERED, this the __26th__ day of March, 2008.


                                     ___s/ David Bramlette_____
                                     UNITED STATES DISTRICT JUDGE